# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA GAINESVILLE DIVISION

**MICHAEL C. CARTER,**

    **Plaintiff,**

**vs.**                                            **Case No. 1:11-CV-97-MP/CAS**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

    **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This is a Social Security case referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D). It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of the Social Security Administration (SSA) denying Plaintiff's application for a period of disability and Disability Income Benefits (DIB). After careful consideration of the entire Record, the undersigned recommends that the decision of the Commissioner be affirmed.

## I. Procedural Status of the Case

This case has a long procedural history, which is not in dispute. For the sake of completeness and background information, the Administrative Law Judge's statement of the case is set forth below.

> On June 28, 1996, the claimant protectively filed an application for a period of disability and disability insurance benefits alleging disability since December 31, 1994. This claim was denied initially and upon reconsideration. The claimant requested a hearing, which was held before Administrative Law Judge John D. Thompson, Jr. on October 22, 1997, in Gainesville, Florida. The claimant appeared and testified on his own behalf and was represented at that hearing by John M. Crotty, an attorney. Ronald J. Spitznagel, an impartial vocational expert, also appeared at that hearing.
>
> On June 30, 1998, Administrative Law Judge Thompson issued an unfavorable hearing decision finding the claimant was not disabled at any time through the date of the decision. On August 25, 1998, the claimant requested that the Appeals Council review the hearing decision of June 30, 1998. On February 29, 2000, the Appeals Council denied the claimant's request for review of the hearing decision of June 30, 1998 (Tr. 6).
>
> On March 21, 2000, the claimant also filed a subsequent application for disability insurance benefits and supplemental security income alleging disability since July I, 1998. The claimant then filed a civil action in U.S. District Court in further appeal of the hearing decision of June 30, 1998. The subsequent claims of March 21, 2000, were allowed at the initial level with a partially favorable determination finding that the claimant was disabled beginning July 28. 2000 but not before. These partially favorable initial determinations were appealed and affirmed at the reconsideration level. On May 14, 2001, the claimant filed a request for hearing on the partially favorable determination made with respect to the application for disability insurance benefits filed March 21, 2000 (Exhibit B-4B; Tr.35·Subsequent claims file).
>
> The Appeals Council vacated and remanded the hearing decision of June 30, 1998, by order dated April 30, 2002 (Exhibit 13B) pursuant to the Judgment of the District Court for the Northern District of Florida, Gainesville Division entered July 24, 2001 (Case No.1:00cv68 MMP) (Exhibit 12B). The Court and Appeals Council remanded the case to an Administrative Law Judge " ... for further consideration of (1) whether the [Florida] Division of Workers' Compensation made any 'finding' concerning [the claimant]'s disability and (2) if so, the amount of weight such finding is entitled to receive." (Exhibit 12B12). The Appeals Council also noted that it had received information regarding the filing of the claimant's subsequent applications of March 21, 2000; the allowance by the DDS

with an established onset date of July 28, 2000 and that the claimant's Title II application was pending in the Hearing Office as of May 14, 2001 (Exhibit 13B/1).

Pursuant to the Appeals Council remand order of April 30, 2002, a supplemental hearing was held before ALJ Thompson on October 21, 2003, in Gainesville, Florida. The claimant personally appeared and testified, and was represented by an attorney, N. Albert Bacharach.

On March 3, 2004, Administrative Law Judge Thompson issued an unfavorable hearing decision (Exhibit 3A) finding the claimant was not disabled at any time from December 31, 1994 through June 30, 1998, the date of the prior hearing decision that was at issue in the court remand order and Appeals Council remand order of April 30, 2002. On March 29, 2004, the claimant filed written exceptions with the Appeals Council in disagreement to the hearing decision of March 3, 2004 (Exhibits B-17B, B-18B & B-19B).

Pursuant to the May 14, 2001 request for hearing made with respect to the subsequent application for disability insurance benefits filed March 21, 2000, a <u>de novo</u> hearing was held before Administrative Law Judge Edward Bayouth-Babilonia on May 13, 2004 in Gainesville, Florida. The claimant personally appeared and testified, and was represented by an attorney, N. Albert Bacharach, Jr. Dee Dee Locascio, an impartial vocational expert, also appeared at the hearing.

On September 24, 2004, Administrative Law Judge Bayouth-Babilonia issued an unfavorable hearing decision finding the claimant was not disabled at any time from July 1, 1998, the alleged onset date in the subsequent application for disability insurance benefits filed March 21, 2000, through March 31, 2001, the date last insured (Subsequent claim file B-Tr. 9-24). On November 22, 2004, the claimant requested that the Appeals Council review the hearing decision of September 24, 2004 (B-Tr. 8). On October 24, 2005, the Appeals Council denied the claimant's request for review of the hearing decision of September 24, 2004 (B-Tr. 5).

On October 27, 2005, the Appeals Council declined to assume jurisdiction of the case and advised the claimant that the ALJ decision of March 3, 2004 with respect to the application file on June 28, 1996, was the final decision of the Commissioner after remand by the court (Exhibit B-20B).

The claimant filed a civil action on December 8, 2005 (Case No.: 1:05-cv-199-MMP/AK) in further appeal of the hearing decision of September 24, 2004 (application dated March 21, 2000).

On September 19, 2006, the claimant filed another civil action (Case No.: 1:06-cv-00185-MPAK) attempting to consolidate the case involving the hearing decision of September 24, 2004 (application dated March 21, 2000) with date of

the case involving the prior hearing decision of March 3, 2004 (application dated June 28, 1996) (see Exhibit B-21 B).

As noted above, the Appeals Council vacated, consolidated and remanded the hearing decisions of March 3, 2004 and September 24, 2004, by order dated March 14, 2007 (Exhibit B-6A) pursuant to the Judgment of the District Court for the Northern District of Florida, Gainesville Division entered January 30, 2007 (Case No.1:06-cv-00185-MP-AK) (Exhibit B-7A). The Court and Appeals Council remanded the case to an Administrative Law Judge to, *inter alia*, rule on all issues for the entire period at issue-December 31,1994, the claimant's alleged onset date, through March 31, 2001, the date he last met the insured status requirements of the Act; obtain treatment records regarding the claimant's hand surgery; allow the claimant to testify regarding limitations secondary to his hand and back surgeries; rearticulate the weight accorded the Florida State Workers' Compensation program's determination that the claimant was "permanently and totally disabled"; re-evaluate the claimant's credibility in light of the Florida State Workers' Compensation program's ultimate determination made any 'finding' concerning [the claimant]'s disability; re-evaluate the claimant's residual functional capacity; given the expanded record obtain additional vocational expert testimony to establish whether there were a significant number of jobs that the claimant could have performed and to include allowing his attorney the opportunity to pose hypothetical's to the expert. The Appeals Council also ordered that the record of the claimant's subsequent application of March 21, 2000 be consolidated with the court remand case based on the claimant's earlier application June 28, 1996 (Exhibit B-6A/5).

Accordingly, the undersigned notes that the period at issue based on the subsequent application filed on March 21, 2000 is now incorporated in the periods at issue based on the prior application of June 28, 1996 and as such represents a duplicate application. Pursuant to the Appeals Council and court remand orders, the undersigned will consider the claimant's application for disability insurance benefits filed on June 28, 1996 with the pertinent period at issue limited to the period from December 31, 1994 through March 31, 2001.

Pursuant to the District Court remand order, the Appeals Council has directed the undersigned to obtain additional vocational expert testimony, which included the findings of the state agency physician and how the assessed limitations affected the claimant's ability to perform the jobs available to him in the national economy.

The claimant is alleging disability since December 31, 1994.

R. 549-51.

As a result of this Court's remand, on June 10, 2010, Administrative Law Judge (ALJ) Philemina M. Jones, conducted a video hearing, with the ALJ located in Orlando,

Florida, and Plaintiff and his representative, Pamela Dunmore, a non-attorney, located in Ocala, Florida. R. 651. The ALJ announced that the hearing was based on "a court remand, specifically to consider comments made in the, on Pages 113 through 120 of the file, specifically comments made that the claimant is often limited in his ability to complete tasks in a timely manner. That will be what will occur at this hearing. I note that there are a few additional documents. We have Documents D29 and 30B and D7B." R. 651-52; *see* R. 577-78 (Court remand). There were no objections to consideration of these exhibits. R. 652. When asked if the Plaintiff would testify, Plaintiff's representative stated that no additional testimony would be offered. *Id.* No additional testimony was received at the hearing and the hearing was closed. *Id.* Toward the end of the brief hearing, Plaintiff's representative advised the ALJ that "[t]his particular issue in this case was to pose a hypothetical to the vocational expert regarding the limitations that you alluded to earlier." R. 653. The ALJ did not "feel that additional questioning of the VE is necessary based on [her] reading of the documents, which will be discussed" in her decision. *Id.* The ALJ also advised that no vocational expert was present at the hearing. *Id.*

Nevertheless, after the hearing, a series of correspondence occurred between the ALJ and Plaintiff's representatives regarding drafts of the ALJ's interrogatories she proposed to send to a vocational expert, Dana Lessne, M.S., C.R.C., L.M.H.C. R. 605-10 (Resume), 611-48. This issue is discussed more fully in section V, *infra*.

On January 25, 2011, the ALJ issued her decision and determined that Plaintiff has been disabled beginning on October 26, 1996, but not from the alleged onset date of December 31, 1994, through October 25, 1996. R. 561. According to Plaintiff, the

Appeals Council did not review the ALJ's decision. Doc. 3-5 at 4. As a result, the ALJ's decision became the final decision of the Commissioner. On August 27, 2012, Plaintiff filed a complaint in this Court and seeks judicial review of the ALJ's determination that Plaintiff was not disabled from December 31, 1994, through October 25, 1996. Doc. 1. The parties have filed memoranda of law, docs. 35 and 37, which have been considered.

## II. Findings of the ALJ

The ALJ made several findings relative to the issues raised in this appeal:

- Plaintiff has not engaged substantial gainful since the alleged onset date of disability, December 31, 1994. R. 554.

- Since the alleged onset date, Plaintiff has several severe impairments: status post-decompression L4-L5 lumbar laminectomy and fusion x3, right hand weakness, a history of depression and alcohol abuse. *Id.*

- Since the alleged onset date, Plaintiff has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments. *Id.*

- Prior to October 26, 1996, the date of disability established by the ALJ, Plaintiff had the residual functional capacity (RFC) to perform sedentary work except he could not perform any work involving climbing, working at heights or working around dangerous machinery and is further restricted in that he had difficulty writing with the dominant right hand, but was able to use a computer keyboard. *Id.*

- Since December 31, 1994, Plaintiff has been unable to perform any past relevant work. R. 559.

- Prior to and after October 26, 1996, Plaintiff was a younger individual age 18-44, has at least a high school education and is able to communicate in English. *Id.*

- Prior to October 26, 1996, considering Plaintiff's age, education, work experience, and RFC, there are jobs that existed in significant numbers in the national economy that Plaintiff could have performed. *Id.*

- Beginning on the established onset date of disability, October 26, 1996, Plaintiff had the same severe impairments listed above with the addition of affective mood disorder. R. 554.

- Prior to October 26, 1996, Plaintiff was not disabled, but became disabled on that date and continued to be disabled through the date of the ALJ's decision. R. 560-61.

- Plaintiff's substance use disorder is not a contributing factor material to the determination of disability. R. 561.

## III. Relevant Medical and Other Evidence

The ALJ summarized the relevant medical and other evidence in the record. Plaintiff does not disagree with the ALJ's factual recitation. Rather, Plaintiff disagrees with the ALJ's conclusion that Plaintiff was not disabled from the alleged onset date, December 31, 1994, through October 25, 1996. Doc. 35 at 10-16. In particular, Plaintiff asserts that the only record support for the established date of disability of October 26, 1996, is the opinion of Patricia Boger, Ph.D., a state agency mental consultant. *Id.* at 15. Plaintiff also argues that his own testimony in support of the alleged December 31, 1994, onset date, that he continued to suffer from difficulties in concentration, persistence, and pace resulting in the failure to compete tasks in a timely manner since

that date, is supported by his Workers' Compensation status from March 5, 1992. *Id.* The ALJ's findings are incorporated herein. R. 555-58.

## IV. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002)(citations omitted).[1]

"In making an initial determination of disability, the examiner must consider four factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history.'" Bloodsworth, 703 F.2d at 1240 (citations omitted).

---

[1] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

Case No. 1:11cv97-MP/CAS

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see 20 C.F.R. § 404.1509 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212 (2002).

The Commissioner analyzes a claim in five steps. 20 C.F.R. § 416.920(a)(4)(i)-(v):

1. Is the individual currently engaged in substantial gainful activity?
2. Does the individual have any severe impairments?
3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?
4. Does the individual have any impairments which prevent past relevant work?
5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work.

If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled. However, if the claimant carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience. Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 416.920(a)(4)(v), (e), & (g). If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

## V. Legal Analysis

As indicated above, this case has a long history with several hearings, ALJ decisions, and Court remands. Unlike the prior cases before this Court, the issue to be decided was well-focused by the prior remand order. Specifically, Senior District Judge Maurice M. Paul adopted the Magistrate's Report and Recommendation, and the decision of the Commissioner denying benefits was reversed and remanded

> for additional vocational expert testimony. This should include the findings of the state agency physician in his assessment dated July 16, 2000, that Plaintiff was "often" limited in his ability to complete tasks in a timely manner, and how that would affect his ability to perform the jobs available to him in the national economy.

R. 577; Carter v. Astrue, No. 1:06cv185-MP/AK Docs. 35 (report and recommendation dated October 27, 2009), 36 (order dated November 30, 2009, adopting report and recommendation). The ALJ re-stated these directions in her decision. R. 551. Relying, in part, on the opinions of a vocational expert, the ALJ found that Plaintiff was disabled

after October 26, 1996, but not before.  The issue here is whether substantial evidence supports the ALJ's determination that Plaintiff was not disabled from December 31, 1994, the alleged on-set date, until October 26, 1996, in light of the remand.

No evidentiary hearing was held before the ALJ.  Rather, aside from considering several additional exhibits, Plaintiff and the ALJ relied on the record developed ever the course of many years.  R. 651-52.  Toward the end of the brief hearing, Plaintiff's representative advised the ALJ that "[t]his particular issue in this case was to pose a hypothetical to the vocational expert regarding the limitations that you alluded to earlier."  R. 653.  The ALJ did not "feel that additional questioning of the VE is necessary based on [her] reading of the documents, which will be discussed in [her] decision.  R. 653.  The ALJ also advised that no vocational expert was present at the hearing.  R. 653.

After the hearing, however, there is a series of correspondence between the ALJ and Plaintiff's representatives regarding drafts of the ALJ's interrogatories she proposed to send to a vocational expert, Dana Lessne, M.S., C.R.C., L.M.H.C.  R. 605-10 (Resume), 611-48.  On or about August 5, 2010, the ALJ requested Mr. Lessne to respond to several hypothetical questions, R. 636-38, and Mr. Lessne responded that Plaintiff (the hypothetical person) could not perform any of his past relevant work and further that Plaintiff could not perform any other work.  R. 639.  On November 17, 2010, the ALJ requested clarification.  R. 642, 644-46.  On or about December 10, 2010, Mr. Lessne submitted interrogatory responses to the ALJ.  R. 647-48.  Mr. Lessne's opinions did not change after the November 17, 2010, request for clarification and he again opined that in light of the hypothetical questions Plaintiff could not perform any of his past relevant work and further that Plaintiff could not perform any other work.

R. 640, 642, 647-48.

The hypothetical questions do not state any time parameters. R. 639-40, 647-48. In her decision, the ALJ relied on Mr. Lessne's opinion when she determined that there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform. R. 560-61. The ALJ determined that prior to October 26, 1996, there were jobs that existed in the national economy that Plaintiff could have performed. R. 559. In order to make this determination, the ALJ relied on the testimony of Walter Todorowski, a vocational expert, who testified during the hearing held by the ALJ on July 10, 2007. R. 378, 397-400.

Plaintiff does not argue that the ALJ did not comply with the remand instructions. Rather, Plaintiff argues that patient records from several treating physicians, such as Phillip L. Parr, M.D., Glenn Paige, M.D., and Eric W. Scott, M.D., support Plaintiff's claim of disability prior to October 26, 1996, and detract from the ALJ's determination. Doc. 35 at 10-15.

The ALJ considered Plaintiff's prior hearing testimony and relevant treating physician and psychologist (Ernest J. Bordini, Ph.D.) patient notes for the critical time-period from December 31, 2004, through October 26, 1996. R. 555-57. The ALJ explained why these patient notes and opinions and other factors did not credibly support Plaintiff's claim of disability. R. 557-58. Substantial evidence supports the ALJ's determination that Plaintiff was not disabled prior to October 26, 1996.

As Plaintiff acknowledges, evidence in the record supports the ALJ's finding that he was disabled as of October 26, 1996. Specifically, in making this determination, the

ALJ relied on a state agency mental consultant's assessment from Patricia Boger, Ph.D. R. 557.[2] The ALJ found:

> Patricia Boger, Ph.D. a state agency mental consultant opined the claimant's memory and concentration were intact but that problems may occur with pace or persistence due to chronic pain and intermittent depression. Likewise, interaction with others may be affected, at times, due to chronic pain and periods of depression resulting in irritability (Exhibit F7; Tr. 136-138). On October 26, 1996, she determined that claimant would often have difficulties in concentration, persistence and pace resulting in failure to complete tasks in a timely manner.

R. 557. The ALJ accurately described Dr. Boger's opinions and Plaintiff does not take issue with the ALJ's findings regarding Dr. Boger.

In addition, the ALJ explained why she accepted the October 26, 1996, date from Dr. Boger and found Plaintiff's allegations of disability prior to that date not credible:

> On October 14, 1996, Dr. Bordini [Plaintiff's treating psychologist] opined that claimant, although depressed, had adequate concentration and no problems with orientation, memory or hallucinations. On October 3, 1996, he opined the claimant had no impairments related to hearing and speaking and was of average intelligence, but he was disabled from a worker's compensation standpoint (Exhibit F6/3). . . .
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible prior to October 26, 1996, to the extent, they are inconsistent with the [RFC] assessment.
>
> In terms of the claimant's alleged physical and mental impairments, the undersigned finds that he is not fully credible regarding his symptoms, functional limitations or inability to work prior to the established onset date of October 26, 1996. The claimant alleges an onset date of December 31, 1994; however, the medical evidence fails to support a finding that the claimant's physical or mental impairments either singly or in combination significantly impaired his ability to function or engage in work activity prior to October 26, 1996.

---

[2] Dr. Boger completed a Mental Residual Functional Capacity Assessment and a Psychiatric Review Technique. Dr. Boger is a non-examining consultant and not a treating psychologist. R. 489-501.

>   Specifically, Dr. Parr stated he did not know the reason for the claimant's continued complaints of back pain. Moreover, the claimant's CT scan revealed only a minimal disk bulge at L5-S1 but no evidence of nerve root impingement (Exhibits 1F and 2F; Tr. 100-109). The claimant testified that his medications affected his ability to think and concentrate. However, in June 1996, he reported that his pain was under good control and he denied any side effects from his medication (Exhibit F5-Tr. 120-132). In October 1996, Dr. Bordini opined the claimant had no problems with concentration, orientation or recent or remote memory or quality of thinking. (Exhibit F6 Tr. 133). The claimant agreed that physical therapy was helping him but that he was not taking the prescribed antidepressants; that his sleep improved after he quit drinking, and that he was participating in physical therapy on an almost daily basis. . . .
>
>   As for the opinion evidence, the undersigned gives weight to the findings of the state agency medical consultant, the medical records in Exhibit B4F, and the findings of Dr. Parr. The undersigned finds that the above records document that the claimant's alleged impairments had a minimal effect on his ability to function prior to the established onset date.
>
>   . . . .
>
>   As to the claimant's allegations of mental impairments during this period [prior to October 26, 1996], the undersigned finds that his mental impairments were not severe. He had only mild limitations in activities of daily living, social functioning and concentration, persistence, or pace, with no episodes of decompensation. This assessment is based, in part, upon the mental examination of Dr. Bordini who opined the claimant, although depressed, had adequate concentration and no problems with orientation, memory or hallucinations as of October 3, 1996 and upon other mental health records.

R. 556-58. The ALJ thus found the disability date of October 26, 1996, based on Plaintiff's mental impairment and by comparing the opinions of Dr. Bordini to those of Dr. Boger. *See* R. 554 (ALJ's finding that "[a]fter the established onset date, the claimant's mental impairments were determined to be severe based on the findings of the state agency medical consultant's assessment dated October 26, 1996 (Exhibit B3F and Exhibit F8)."). The ALJ further found that "beginning on October 26, 1996, the claimant's allegations regarding his symptoms and limitations are generally credible."

R. 558. The ALJ based this finding on reports and assessments from a state agency medical consultant and again referenced the opinion of Dr. Boger. *Id.* The ALJ sufficiently explained her disability date determination and her findings are supported by the record.

Plaintiff also argues that the ALJ erred in not giving any weight to Plaintiff's Florida Workers' Compensation receipt of temporary and total disability from 1992 until 1996 and then permanent total disability from 1996 to date, in determining Plaintiff's onset date. Doc. 35 at 15-16. In Plaintiff's prior appeal, his argument that the ALJ erred in not giving weight to this evidence was rejected. R. 575-76; Carter v. Astrue, No. 1:06cv185-MP/AK Docs. 35 (report and recommendation dated October 27, 2009), 36 (order dated November 30, 2009, adopting report and recommendation)

## VI. Conclusion

Considering the record as a whole, substantial evidence supports the ALJ's finding that Plaintiff became disabled as of October 26, 1996. Accordingly, pursuant to 42 U.S.C § 405(g), it is respectfully recommended that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED**.

**DONE AND ORDERED** at Tallahassee, Florida, on May 20, 2013.

                                       s/ Charles A. Stampelos
                                       **CHARLES A. STAMPELOS**
                                       **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy of this report and recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**